# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **Kristopher McGee,** | : | |
| Plaintiff, | : | Case No. 2:20-cv-1625 |
| vs. | : | Judge Watson |
| **David Suciu, et. al.,** | : | Magistrate Judge Jolson |
| Defendants. | : | |

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 18), Defendants David Suciu and Erin Fuller's Motion for Summary Judgment (Doc. 33), Defendants' Motion to Strike (Doc. 38), and Plaintiff's Motion to Provide Supplemental Evidence (Doc. 41). The Undersigned **RECOMMENDS DENYING** Plaintiff's Motion for Summary Judgment (Doc. 18) and **GRANTING in part** Defendants David Suciu and Erin Fuller's Motion for Summary Judgment (Doc. 33). Additionally, Defendants' Motion to Strike (Doc. 38) and Plaintiff's Motion to Provide Supplemental Evidence (Doc. 41) are **GRANTED**.

### I. BACKGROUND

Around 2:30 a.m. on August 12, 2018, Plaintiff Kristopher McGee was booked into the Muskingum County Jail. (Complaint, Doc. 3, PageID # 33). About five hours later, at 7:00 a.m., Defendant Deputy Erin Fuller reported for duty (Fuller Decl., Doc. 23-1, ¶ 3, PageID # 133), joining her colleagues Deputy Tyler Finley and Officer Stacey Lynn. (*Id.* at ¶ 4, Page ID # 133). Because the previous shift reported that Plaintiff may be withdrawing from heroin and fentanyl (*id.* at ¶ 5, PageID # 133), Defendant Fuller asked the jail nurse to assess Plaintiff as soon as she completed administering medications to other inmates. (*Id.* at ¶ 9, PageID # 133). Defendant

1

Fuller explained to Plaintiff that the nurse would see him as soon as medication pass was complete. (*Id*. at ¶ 8, PageID # 133).

At approximately 8:30 a.m., the jail nurse evaluated Plaintiff. (*Id*. at ¶ 10, PageID # 134). The nurse reported to Defendant Fuller that Plaintiff's vitals were good and that she was going to consult with the jail physician to determine next steps. (*Id*. at ¶ 11, PageID # 134). Meanwhile, Defendant Fuller provided Plaintiff with a cold wet washcloth and apple juice. (*Id*. at ¶ 12, PageID # 134). She says she did this to keep Plaintiff comfortable and hydrated until the jail nurse received further instructions. (*Id*.).

A short time later, Plaintiff asked to use the telephone. (*Id*. at ¶ 13, PageID # 134). Because Plaintiff seemed calm and polite, Defendant Finley acquiesced. (*Id*.). At 9:12 a.m., Deputy Finley let Plaintiff out of his cell to use the phone. (*Id*. at ¶ 14, PageID # 134). Officer Lynn then arrived at the booking area with two female inmate kitchen workers. (*Id*. at ¶ 15, PageID # 134).

Two minutes later, Officer Lynn walked near the phone where Plaintiff was located. (*Id*. ¶¶ 15, 17, PageID # 134, Video 1 at 4:22, Video 2 at 2:20, Video 3 at 2:22). Plaintiff quickly dropped the phone and grabbed Officer Lynn around her neck. (*Id*.). While holding onto Officer Lynn, Plaintiff demanded to be released from custody. Defendant Fuller told Plaintiff that he would not be released. (*Id*. at ¶¶ 17–18, PageID # 134–35). Defendant Fuller yelled for Plaintiff to release Officer Lynn multiple times, before drawing her taser. (*Id*. at ¶ 18, PageID # 135). Plaintiff began backing up while continuing to hold Officer Lynn around the neck. (*Id*., Video 3 at 2:22– 3:33). Finally, Plaintiff released Officer Lynn, and Defendant Fuller did not have to use her taser. (*Id*.). Officer Lynn was injured from the assault and, ultimately, had to be transported to the hospital. (*Id*. at ¶¶ 25, 28, PageID # 135–36, Exhibit 2, Report of Injury or Accident).

At this point, Deputy Finley and Officer Lynn handcuffed Plaintiff. (*Id*. at ¶ 19, PageID # 135, Video 3 at 2:22–3:33). Deputy Finley and Defendant Fuller then escorted Plaintiff to his cell at 9:15 a.m. (*Id*. at ¶ 20, PageID # 135). Plaintiff refused and, as the video shows, struggled with Defendant Fuller. (*Id*.; *see also* Video 1 at 5:50 and Video 2 at 3:40–3:50 when Deputy Finley runs back to try and help Defendant Fuller). At that point, Defendant Fuller asked Deputy Finely to get the restraint chair while she held onto Plaintiff. (*Id*. at ¶ 21, PageID # 135).

A minute later, Deputy Yester arrived and assisted Deputy Finley and Defendant Fuller in securing Plaintiff in the restraint chair. (*Id*. at ¶ 22, PageID # 135, Video 2 at 4:20). Once in the chair, Plaintiff began rocking violently and banging his head off the back of the chair. (*Id*. at ¶ 23, PageID # 135, Video 1 between 9:00 and 10:20; Video 2 between 7:00 and 8:30). The deputies attempted to place a helmet on Plaintiff's head, but, as the video shows, Plaintiff continued to thrash about, and the helmet would not stay in place. (*Id*.).

At 10:10 a.m., the jail nurse—based on the orders of the jail physician—administered sedatives to Plaintiff. (*Id*. at ¶ 29, PageID # 136; Jail Medical Records, Exs. 2, PageID # 140, 159). The Log shows that Plaintiff was released from the chair at times, given water, permitted to stretch, received medical care, and allowed to shower. (*Id.*, PageID # 181–86).

Subsequently, Plaintiff filed this lawsuit. In brief, he claims his constitutional rights were violated because Defendants forced him to take sedatives and placed and kept him in a restraint chair for nearly 24 hours. (Doc. 3, ¶ 13–15, PageID # 34). He also claims that the medical treatment he received while restrained was inadequate. (*Id.*, ¶ 16). After surviving the initial screening process under 28 U.S.C. §§ 1915(e) and 1915(A), the case proceeded. Discovery progressed, and Plaintiff filed a Motion for Summary Judgment (Doc. 18), which is opposed (Docs. 22, 23). About two months later, in December 2020, Plaintiff moved to amend his

complaint to add Dr. Khoury as a defendant. (Doc. 27). Because the amendment did not contain factual allegations against Dr. Khoury, the Court ordered Plaintiff to file a proposed amended complaint that included factual allegations against Dr. Khoury. (Doc. 32). Plaintiff did not do so. Instead, he expressly told the Court that he did not want Dr. Khoury to be a named defendant in this action. (Doc. 34-1, PageID # 274). So the Court denied Plaintiff's Motion to Amend as moot. (Doc. 35). Around that time, Defendants Erin Fuller and David Suciu moved for summary judgment. (Doc. 33). Then, Plaintiff filed an amended complaint, naming Dr. Khoury as a defendant. Defendants responded by filing a Motion to Strike Amended Complaint. (Doc. 38). Plaintiff did not respond, and his timing for doing so is long past. So that Motion (Doc. 38) and the competing summary judgment motions (Docs. 18, 33) are ripe for review.

## II. DEFENDANTS DAVID SUCIU AND ERIN FULLER'S MOTION FOR SUMMARY JUDGMENT (Doc. 33)

Defendants Suciu and Fuller have moved for relief on multiple grounds.

### A. Exhaustion

Defendants seek dispositive relief because they say that Plaintiff failed to exhaust his administrative remedies. (Doc. 33 at 5–6, PageID # 222–23). Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner wishing to challenge the circumstances or conditions of his confinement must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."); *see also Fazzini v. Northeast Ohio Corr. Center*, 473 F.3d 229, 231 (6th Cir. 2006). The "mandatory language [of the PLRA] means a court may not excuse a failure to exhaust." *Ross v. Blake*, 136 S. Ct. 1850, 1856–57 (2016). Proper exhaustion demands that a prisoner "complete the administrative review process in accordance with the applicable procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).

4

Plaintiff is currently incarcerated, and he was incarcerated when this lawsuit was filed. (Complaint, Doc. 3, ¶ 3, PageID # 29, 33). So the exhaustion requirements of the PLRA apply. (Suciu Supp. Decl., Doc. 33-1, ¶¶ 4–6, PageID # 237, Exhibits 1 and 2, PageID # 240–48). There is also evidence in the record that Plaintiff was aware of the grievance process since he filed a grievance on an unrelated issue. (*Id*. at ¶ 11, PageID # 239, Exhibit 3, PageID # 249–50). Yet, Plaintiff never started or completed the administrative review process regarding any issue in this case (use of the restraint chair or administration of medication). (*Id*. at ¶¶ 12–13, PageID # 239).

In response, Plaintiff claims that he filled out a single unspecified grievance, but it was never addressed. (Resp. in Opp., Doc. 37, PageID # 286). Unfortunately for Plaintiff, this representation is not enough. Plaintiff's self-serving and vague assertions of exhaustion are not sufficient to create a material issue of fact. Time and again, courts have come to this conclusion. For example, in *Sumser v. Lykins*, the plaintiff claimed he was raped by a jail corrections officer. Case No. CV 18-4-HRW, 2019 WL 1210096, at *3 (E.D. Ky. Mar. 14, 2019).

Like the Defendants in this case, the defendants in *Sumser* produced evidence of the jail's grievance policy and the absence of any grievance related to the alleged rape. *Id*. at **9–10. Like Plaintiff in this case, the plaintiff in *Sumser* responded with "self-serving statements . . . that he did file several grievances about the incidents alleged in his complaint and personally gave them to [the jailer] and that he further personally told [the jailer] about the incidents." *Id*. at *4. And those unsupported assertions were insufficient to create a genuine issue of material fact concerning PLRA exhaustion. *Id*. at **10–16.

Other courts have ruled similarly. *See, e.g.*, *Scott v. Kastner-Smith*, 298 F. Supp. 3d 545, 555 (W.D.N.Y. 2018) ("[C]ourts have consistently held . . . that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement."); *Engles v. Jones*,

5

No. 13-CV-6461, 2018 WL 6832085, at *10 (W.D.N.Y. Dec. 28, 2018) (granting summary judgment to defendants for failure to exhaust where there was no record of plaintiff filing his grievance, and plaintiff merely alleged, without any documentary support, that his grievance was lost or destroyed); *Jackson v. Baca*, No. CV12-10393-JLS JEM, 2018 WL 1916307, at *6 (C.D. Cal. Feb. 13, 2018), *report and recommendation adopted*, No. CV12-10393 JLS JEM, 2018 WL 1918497 (C.D. Cal. Apr. 18, 2018) ("Plaintiff's assertions that he gave a deputy an inmate complaint form and then never heard anything again are simply too vague and inconclusive to create a genuine issue regarding exhaustion or the availability of administrative remedies."); *Rodgers v. Reynaga*, No. CV 1-06-1083-JAT, 2009 WL 2985731, at *3 (E.D. Cal. Sept. 16, 2009), *aff'd*, 393 F. App'x 447 (9th Cir. 2010) ("To grant Plaintiff an exception to PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule."); *Hendon v. Baroya*, No.1:05-CV-00838, 2007 WL 3034263, at *3 (E.D. Cal. Oct. 16, 2007), *report and recommendation adopted*, No. 1:05-CV-00838-OWW-SMS-PC, 2008 WL 482868 (E.D. Cal. Feb. 20, 2008), *aff'd*, 320 F. App'x 717 (9th Cir. 2009) ("The vague assertion that grievances were filed is insufficient to make the requisite showing that exhaustion either occurred or was excused due to some form of conduct on the part of prison officials which prevented plaintiff from properly utilizing the appeals process."). Because Plaintiff failed to comply with the PLRA's exhaustion requirement, his Complaint against Defendants Suciu and Fuller should be dismissed.

**B. Merits**

Although exhaustion requires dismissal, such a dismissal is without prejudice. Consequently, the Court addresses Defendant Suciu's and Fuller's additional arguments that summary judgment should be granted on the merits of Plaintiff's claims. Specifically, Defendant

Suciu argues that he must be dismissed as he had no personal involvement in the conduct about which Plaintiff complains. Defendant Fuller, for her part, asserts that she had no role in Plaintiff's medical treatment, and that she did not violate Plaintiff's constitutional rights by placing and keeping him in a restraint chair.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Co., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002). Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. *Celotex*, 477 U.S. at 317. To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Id.* at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Thus, "the inquiry performed is the

threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

1. *Defendant Captain Suciu*

Personal involvement is a prerequisite to a section 1983 claim. *See Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381, at *1 (6th Cir. Sept. 20, 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 372 (1976)) ("Liability cannot be established absent a clear showing that the defendants were personally involved in the activity forming the basis of the alleged unconstitutional behavior."); *see also McLaurin v. Morton*, 48 F.3d 944, 947 (6th Cir. 1995) (stating that "[w]hen a claim to qualified immunity arises in the context of a motion for summary judgment," the court should "first decide whether a plaintiff has stated a section 1983 claim against the individual defendants").

Here, Plaintiff fails to allege that Defendant Suciu took any action against him, other than to suggest that Defendant Suciu inadequately supervised his subordinates or failed to respond to Plaintiff's grievances. (Complaint, Doc. 3, ¶¶ 4, 17, PageID # 33–34). But that is not enough. Government officials may not be held liable for the unconstitutional conduct of their subordinates under theories of *respondeat superior* or vicarious liability. Instead, a claimed constitutional violation must be based upon active unconstitutional behavior. So the acts of one's subordinates are insufficient, nor can supervisory liability be based upon the mere failure to act. Moreover—and relevant here—liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional

8

violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).

More than once, the Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official. "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (internal quotation marks omitted). This means that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo*, 423 U.S. 362 at 375–76, and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

Here, Defendant Suciu has sworn that he had no involvement in Plaintiff's medical treatment or Plaintiff's placement in a restraint chair. (Suciu Decl., Doc. 23-2, ¶¶ 4–6, PageID # 187). In fact, Captain Suciu was not working on August 12, 2018, the date of the incident. (*Id*. at ¶ 3, PageID # 187). Defendant Fuller also swore that she tried to reach Defendant Suciu by phone, but he did not answer. (Fuller Decl., Doc. 23-1, ¶ 26, PageID # 135). In one of his filings, Plaintiff says that Defendant Suciu was present, but mostly, Plaintiff bases his claims on Defendant Suciu's status as a supervisor. Specifically, Plaintiff alleges that Defendant Suciu was "responsible for the operation of the Muskingum County Jail and for the welfare of all inmates at the facility." (Complaint Doc. 3, ¶ 4, PageID # 33). But that is not enough for Defendant Scuiu to be liable under § 1983, and he is entitled to summary judgment on Plaintiff's claims because he had no personal involvement in the actions that form the basis of Plaintiff's complaint.

2. *Defendant Deputy Fuller*

Plaintiff has sued Defendant Fuller for unconstitutionally administering sedatives and placing and keeping him in a restraint chair.

a. Medication Administration

As explained, a defendant cannot be liable for a constitutional violation where she had no personal involvement. *See Copeland*, 57 F.3d at 481. Here, Plaintiff alleges that his constitutional rights were violated when he was forced to take sedatives. (Complaint, Doc. 3, ¶¶ 18–19, PageID #34). But Defendant Fuller has sworn that she neither administered nor had any part in the decision to administer sedatives to Plaintiff. (Fuller Decl., Doc. 23-1, ¶ 29, PageID # 133). And, in fact, she has no authority to administer or prescribe mediations under Ohio law. *See* Ohio Rev. Code §§ 3719.06 and 3719.07. Instead, medical personnel bear that responsibility. The record confirms that it was not Defendant Fuller who administered the sedatives. At 9:20 a.m., the jail nurse phoned the jail physician and reported her observations and information regarding Plaintiff's condition. (Jail Medical Records, Doc. 23-1, Exhibit 2, PageID # 139, 159). At approximately 10:00 a.m., the jail physician ordered injections of Ativan and Haldol. (*Id*.).

Plaintiff has offered no evidence to show that Defendant Fuller was involved in medication decisions and administration. In fact, he appears to agree. In opposing Defendants' Motion—and in support of his own—Plaintiff names Defendant Nurse Brown as the one who administered the sedatives. (Doc. 37, PageID # 283). Consequently, it is **RECOMMENDED** that Defendant Fuller be **GRANTED** summary judgment on this claim. *See e.g. Martin v. Kazulkina*, No. 12-CV-14286, 2017 WL 971706, at *11 (E.D. Mich. Feb. 21, 2017), *report and recommendation adopted*, No. 12-CV-14286, 2017 WL 958081 (E.D. Mich. Mar. 13, 2017) (granting summary judgment on forced medication claim due to lack of personal involvement); *Beall v. Maryland*, No. GJH-15-

2180, 2016 WL 4512718, at *6 (D. Md. Aug. 22, 2016) (same); *Santos v. Bush*, 874 F. Supp. 2d 408, 419–20 (D.N.J. 2012) ("Plaintiff's complaint fails to allege any specific conduct by [Defendant] sufficient to demonstrate that she had personal involvement in allegedly implementing the [Forced Medication Protocol] on Plaintiff without due process"); *Bullock v. Ancora Psychiatric Hosp.*, No. CIV. 10-1412 RBK/AMD, 2011 WL 3651352, at *5 (D.N.J. Aug. 18, 2011) (holding that employees who did not participate in the forced medication could not be liable for Fourteenth Amendment violations); *Green v. Dormire*, No. 08-4047-CV-C-NKL, 2009 WL 813972, at *3 (W.D. Mo. Jan. 27, 2009) ("Plaintiff's claims do not support that these defendants played a role in the decision-making process about whether to medicate plaintiff.").

  b. Restraint Chair

Plaintiff also alleges his constitutional rights were violated when Defendant Fuller placed and kept him in a restraint chair for roughly 24 hours. Plaintiff's claims arose while he was a pretrial detainee, bringing the claims under the purview of the Fourteenth Amendment. An "excessive force claim brought under the Fourteenth Amendment's Due Process Clause is subject to the same objective standard as an excessive force claim brought under the Fourth Amendment." *Clay v. Emmi*, 797 F.3d 364, 369 (6th Cir. 2015) (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015)).

Further, Eighth Amendment rights are generally co-extensive with the Due Process Clause of the Fourteenth Amendment. *Richmond v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018) (recognizing that *Kingsley* abrogated the subjective intent requirement for Fourteenth Amendment excessive-force claims, but declining to apply the *Kingsley* standard to a pretrial detainee claim of deliberate indifference to a serious medical need). Accordingly, Eighth Amendment prisoner

11

claims and Fourteenth Amendment pretrial detainee claims are analyzed "under the same rubric." *Id.* (quoting *Villegas v. Metro Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

Defendant Fuller argues that she is entitled to qualified immunity because her actions were reasonable and did not violate clearly established law. "Qualified immunity shields public officials from civil liability under 42 U.S.C. § 1983 unless their actions violate clearly established rights 'of which a reasonable person would have known.'" *Hopper v. Plummer*, 887 F.3d 744, 751 (6th Cir. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), and protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Plaintiff alleges that restraining him was excessive, violating his constitutional rights.

The Undersigned has little difficulty concluding that Plaintiff's constitutional rights were not violated when he was placed in the restraint chair. The uncontroverted evidence shows that Plaintiff assaulted a corrections officer and tried to take her hostage. (Fuller Decl., Doc. 23-1, ¶¶ 15, 17, PageID # 134, Video 1 at 4:22, Video 2 at 2:20, Video 3 at 2:22). When the officers attempted to place Plaintiff back into his cell, he violently refused. (*Id*. at ¶ 20, PageID # 135; *see also* Video 1 at 5:50 and Video 2 at 3:40–3:50 when Deputy Finley runs back to try and help Defendant Fuller). At that point, the officers secured Plaintiff in a restraint chair. (*Id*. at ¶ 22, PageID # 135, Video 2 at 4:20). Even then, Plaintiff continued to move violently, banging his head off the back of the chair. (*Id*. at ¶ 23, PageID # 135, Video 1 between 9:00 and 10:20; Video 2 between 7:00 and 8:30). When the officers attempted to place a helmet on him for his protection, Plaintiff continued to thrash so that the helmet would not stay on. The objective facts illustrate that Plaintiff was a danger to himself and others. Placement in the restraint chair was objectively

12

reasonable. *Fletcher v. Vandyne*, No. 2:07-cv-325, 2009 WL 1687956, at *14 (S.D. Ohio June 11, 2009) ("A restraint chair may be properly used to restore control over an individual who is in custody or to prevent such an individual from harming himself."); *see also Grinter v. Knight*, 532 F.3d 567, 573–74 (6th Cir. 2008) (finding that the "Due Process Clause does not give rise to a liberty interest in freedom from four-point restraints" where plaintiff was placed in a four-point restraint chair for four hours after he was accused of assaulting a guard).

Yet, Plaintiff was restrained for nearly 24 hours, even after he was sedated. The Restraint Chair Log shows that Plaintiff's time in the chair began at 9:27 a.m. on August 12, 2018, and ended the next day at 9:20 a.m. (Doc. 23-1, PageID # 181, 186). At 10:10 a.m., Defendant Brown administered sedatives to Plaintiff. (*Id.*, PageID # 136; Jail Medical Records, Exs. 2, PageID # 140, 159). The Log shows that Plaintiff was released at times, given water, permitted to stretch, received medical care, and allowed to shower. (*Id.*, PageID # 181–86). Nothing in the Log states that Plaintiff was violent or otherwise uncooperative. In her declaration, Defendant Fuller said the following about Plaintiff's time while restrained:

- "I worked until 7:00 p.m. on August 12, 2018. Throughout the rest of my shift, Mr. McGee was constantly checked on while he was in the restraint chair."

- "During my shift, Mr. McGee's limbs were periodically released from the chair."

- "Mr. McGee was allowed to stretch. Mr. McGee was checked on by both jail staff and medical personnel. Mr. McGee was provided water and food. Mr. McGee was allowed to shower after having an accident."

- I had no further contact with Mr. McGee until 7:00 a.m. on August 13, 2018.

(Fuller Decl., Doc. 23-1, ¶¶ 31–33, PageID # 136). Like the Chair Restraint Log, nothing in Defendant Fuller's statement indicates continued resistance or violence from Plaintiff. Importantly, the video evidence in the record ends at 9:28 a.m., so neither Plaintiff's treatment nor his conduct can be viewed.

For his part, Plaintiff has told the Court that he received insufficient bathroom breaks and was "forced to sit in filth." (Doc. 37, PageID # 283). Plaintiff also says that the restraints were too tight, which caused him pain. (*Id.*). While the Undersigned acknowledges that these are not sworn statements, Plaintiff's testimony is not part of the record. Defendants were granted leave to depose Plaintiff, but no deposition transcript has been filed. Given his *pro se* status, the Undersigned gives Plaintiff's unsworn statement some consideration.

The Supreme Court has told us that a number of considerations may bear on the reasonableness—or unreasonableness—of the force used. Although not an exhaustive list, the Court has named: "[T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 394. Viewing the evidence in the light most favorable to Plaintiff, much of the answers to those types of questions remain unanswered. So there is a genuine issue of material fact as to whether restraining Plaintiff for this extended period was so excessive that it amounted to punishment. The facts and circumstances surrounding the need to keep Plaintiff restrained—and the conditions of that restraint—should be evaluated by a jury. Consequently, the Undersigned **RECOMMENDS DENYING** summary judgment on this claim. Instead, as explained, it is recommended that his claim be dismissed without prejudice for failure to exhaust. *Supra* at Section II(A).

C. **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 18) AND MOTION TO PROVIDE SUPPLEMENTAL EVIDENCE (Doc. 41)**

Although not entirely clear, Plaintiff appears to have moved for summary judgment on all of his claims. (Doc. 18). As for the claims against Defendants Suciu and Fuller, the requested relief must be denied for the reasons explained above. Plaintiff failed to exhaust, *supra* at Section

II(A); Defendant Suciu had no personal involvement in the conduct alleged, *supra* at Section II(B)(1); Defendant Fuller had no personal involvement in medication administration, *supra* at Section II(B)(2); and a genuine issue of material fact exists regarding Plaintiff's excessive force claim, *supra* at Section II(B)(2)(b).

Additionally, Plaintiff has sought dispositive relief against Dr. Andrew Khoury and Defendant Brown. But Dr. Khoury is not a defendant in this case. And for that reason alone, Plaintiff cannot be granted summary judgment on any claims against Dr. Khoury.

As for Defendant Brown, the Undersigned concludes that Plaintiff has not shown that no genuine issue of material fact remains such that the judgment should be entered in his favor. Plaintiff claims that his rights were violated when Defendant Brown forcibly administered sedatives. (Doc. 18, PAGEID # 98). For support, and months after moving for summary judgment, Plaintiff seeks to supplement the record with several of his mental health treatment records from the Ohio State Penitentiary, as well as general information on opioid withdrawal. (Doc. 41). While unclear, it appears that Plaintiff believes his medical records show that he suffered from an opioid addiction when he was arrested and booked into jail. (*See id*. at 1 (asserting that Defendant Brown should have "check[ed]" this information before "rush[ing] to judgment and forcibly inject[ing] [him] with unknown levels of Ativan & Halodal")). Given his *pro se* status, and to ensure a complete record in this matter, Plaintiff's Motion to Provide Supplemental Evidence (Doc. 40) is **GRANTED**. Yet, as explained below, these additional records do not entitle Plaintiff to summary judgment against Defendant Brown.

Pretrial detainees have a constitutional liberty interest in avoiding unwanted medication. *Bee v. Greaves*, 744 F.2d 1387, 1394 (10th Cir. 1984). Yet, the interest is not absolute and must be weighed against competing state interests. *Id*.; *Washington v. Harper*, 494 U.S. 210, 227 (1990)

(holding that "the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest"). The Supreme Court has emphasized that decisions concerning the treatment of committed individuals should be "made by medical professionals rather than a judge," assuming adequate procedural safeguards exist. *Id.* at 231. Thus, "decisions of professionals are presumptively valid and will result in liability only when the decision . . . is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982).

Here, the video evidence shows that Plaintiff assaulted a corrections officer and then tried to take her hostage. (Video 1 at 4:22, Video 2 at 2:20, Video 3 at 2:22). Plaintiff admits he "seize[ed] a female deputy around the neck" in an attempt to get relief from his opioid addiction withdrawal. (Doc. 18, PageID # 97). Even after he was restrained, he continued to thrash his head violently. (Video 1 between 9:00 and 10:20; Video 2 between 7:00 and 8:30). On these facts, the Undersigned cannot conclude that forcibly sedating Plaintiff was a violation of his constitutional rights. A genuine issue of material fact remains, and it is **RECOMMENDED** that Plaintiff's Summary Judgment Motion (Doc. 18) be **DENIED**. *See Vandyne*, 2009 WL 1687956, at *14 (denying summary judgment on excessive force claim where plaintiff was placed in a restraint chair for five to six hours and the conditions of his restraint remained disputed).

### D. MOTION TO STRIKE (Doc. 38)

Defendants and non-party Dr. Anthony Khoury have moved to strike Plaintiff's Amended Complaint (Doc. 36) under Rule 12(f) of the Federal Rules of Civil Procedure. That Rule permits a court to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent,

or scandalous matter." Fed. R. Civ. P. 12(f). Courts have "broad discretion in determining whether to grant a motion to strike." *Frisby v. Keith D. Weiner & Assoc.*, 669 F. Supp. 2d 863, 867 (N.D. Ohio 2009). This broad discretion includes the authority to strike inappropriate filings. *Olagues v. Steinour*, No. 2:17-CV-49, 2018 WL 300377, at *1 (S.D. Ohio Jan. 4, 2018) (citing *Sheets v. U.S. Bank, Nat. Ass'n*, No. 14-CV-10837, 2014 WL 5499382, at *2 (E.D. Mich. Oct. 30, 2014)).

District courts within the Sixth Circuit routinely strike amended pleadings that are filed without leave of court. *See, e.g.*, *Sheets*, 2014 WL 5499382, at *2 (striking an amended complaint that was filed without leave); *Eberhard v. Chicago Title Ins. Co.*, No. 1:11 CV 834, 2014 WL 12756822, at *1 (N.D. Ohio Jan. 8, 2014) (granting a motion to strike a sur-reply that was filed without leave); *Cinpres Gas Injection Ltd. v. Volkswagen Grp. of Am., Inc.*, No. 12-CV-13000, 2012 WL 12542288, at *1 (E.D. Mich. Dec. 14, 2012) (granting a motion to strike a second amended complaint that was filed without leave); *Stanich v. Hissong Grp., Inc.*, No. 2:09-CV-143, 2011 WL 1560650, at *5 (S.D. Ohio Apr. 25, 2011) (striking an amended complaint that was filed without leave).

Here, Plaintiff sought leave to file an amended complaint. (*See* Mot. to Amend Complaint, Doc. 27). Viewing the request as incomplete, the Court ordered Plaintiff to file a proposed amended complaint "including specific factual allegations against Dr. Khoury" within 21 days of February 9, 2021. (Doc. 32). Yet, on February 24, 2021, Plaintiff filed a Notice with the Court representing that he no longer sought to add Dr. Khoury as a named Defendant. (Doc. 34). Because the only basis for Plaintiff's proposed amended complaint was to add Dr. Khoury as a party, and Plaintiff no longer sought to add Dr. Khoury, the Court denied Plaintiff's Motion to Amend his Complaint as moot. (Doc. 35). Nevertheless, following the Order denying Plaintiff's Motion, Plaintiff filed an Amended Complaint on March 1, 2021. (Doc. 36).

That filing violated the Court's Order denying his Motion for Leave to File an Amended Complaint. Further, allowing Plaintiff to add Dr. Khoury at this stage—after dispositive motions have been filed—would be prejudicial to Defendants. Additionally, the Undersigned notes that any attempt to amend might be futile because Dr. Khoury could seek dismissal due to Plaintiff's failure to exhaust. Thus, Plaintiff's Amended Complaint (Doc. 36) is **STRICKEN**.

III.  CONCLUSION

In sum, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment (Doc. 18) be **DENIED**. It is further **RECOMMENDED** that Defendants David Suciu and Erin Fuller's Motion for Summary Judgment (Doc. 33) be **GRANTED in part** and **DENIED in part**. Specifically, it is **RECOMMENDED** that all claims against Defendant Suciu be **DISMISSED with prejudice**; the claim for forced medical treatment against Defendant Fuller be **DISMISSED with prejudice**; and the claim against Defendant Fuller for excessive force be **DISMISSED without prejudice**. Defendants' Motion to Strike (Doc. 38) and Plaintiff's Motion to Provide Supplemental Evidence (Doc. 41) are **GRANTED**. The Clerk is **DIRECTED** to remove the Amended Complaint filed by Kristopher McGee (Doc. 36) from the docket.

Finally, the Undersigned views this as an opportune time for the parties to attempt to resolve this matter extrajudicially before the Court sets a trial date. Thus, this case is **REFERRED** to mediation before Magistrate Judge Mark R. Abel (ret.) for July 2021. Defendant shall coordinate with Plaintiff, and together, the parties shall contact Magistrate Judge Abel (Abel.mark@gmail.com) within fourteen (14) days of the date of this Order in order to schedule a a mediation to be conducted no later than July 31, 2021. Given this posture, the period to object to the Report and Recommendation is **STAYED**.

## **Procedure on Objections**

If any party objects to this Report and Recommendation, that party may file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Because the parties have been ordered to mediation, the period to object to the Report and Recommendation is **STAYED**. If mediation is unsuccessful, the Court will set a briefing schedule to permit objections.

IT IS SO ORDERED.

Date: June 7, 2021         s/Kimberly A. Jolson
                           KIMBERLY JOLSON
                           UNITED STATES MAGISTRATE JUDGE